UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

KEISHA D. HOGANS,        :
               :
     Plaintiff,     :   23-CV-10514 (VSB) (OTW)
               :
    -against-     :   **REPORT AND RECOMMENDATION**
               :   **TO THE HONORABLE VERNON S.**
N.Y.C. COMPTROLLER'S OFFICE, et al., :   **BRODERICK**
               :
     Defendants.   :

------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

*Pro se* plaintiff Keisha D. Hogans ("Plaintiff") brings this action against the New York City

Comptroller's Office ("OOC"), the New York City Office of Administrative Trials and Hearings

("OATH") and Administrative Law Judge Kevin Casey ("ALJ Casey"), the New York City

Department of Investigation ("DOI"), the New York State Office of the Attorney General

("OAG"), Caroline J. Downey ("Downey") in her capacity as the Civil Rights Commissioner of the

New York State Division of Human Rights ("NYSDHR"), the Department of Justice Civil Rights

Division ("DOJ"), the Equal Employment Opportunity Commission ("EEOC"),[1] and District

Council 37, AFSCME[2] ("DC 37") (collectively, "Defendants"). Plaintiff, a Black woman over the

age of 40, alleges, *inter alia*, violations of Title VII of the Civil Rights Act of 1964 ("Title VII"); the

Age and Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.; Title I of the

American Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq*.; and federal, state, and

---

[1] The DOJ and EEOC are subject of a previously filed Report and Recommendation recommending dismissal for failure to serve. (*See* ECF 79).

[2] DC 37 is part of the American Federation of State, County and Municipal Employees, a nationwide federation.

city whistleblower acts stemming from an incident at work, her subsequent reports of

misconduct and multiple complaints to the EEOC and NYSDHR, and grievance procedures

brought against Plaintiff by her employer which resulted in her being suspended for 20 days

without pay. (ECF 1). Pending before the Court are Defendants' motions to dismiss.

(ECF Nos. 22, 32, 40).

For the reasons discussed below, I respectfully recommend that Defendants' motions to

dismiss be **GRANTED** in their entirety.

## I.    FACTUAL HISTORY[3]

### A.    February 2, 2018 Charge

On February 2, 2018, while Plaintiff was working as a Computer Associate in the Central

Imaging Facility of the OOC, Plaintiff claims that she heard her co-workers discussing a

pornographic video that they apparently watched on a coworker's personal cellphone with

Plaintiff's manager, Jean Corbett. (ECF Nos. 1 at 9; 1-1 at 5, 12-13, 131; 41-4 at 3). Plaintiff did

not see or hear the video herself, and it was not shared with her. (ECF 1-1 at 132). Plaintiff then

sent an email to the OOC's internal Equal Employment Opportunity ("EEO") Officer, Diane

Randall ("Ms. Randall") on or about the same day, (the "February 2, 2018 Charge"), and a

subsequent meeting with Ms. Randall and an EEO counselor took place about a week after the

incident. (ECF 1 at 103-4; ECF 1-1 at 17). The case was transferred from Ms. Randall to OOC's

Office of General Counsel ("OGC") after Ms. Randall determined that Plaintiff's claims

amounted to allegations of misconduct. (ECF 1-1 at 122-123). On September 16, 2018, Plaintiff

---

[3] For purposes of deciding defendants' motions to dismiss, the Court accepts as true all facts alleged by Plaintiff and draws all reasonable inferences in Plaintiff's favor. *See Krassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

and her union representative met with Shelley Ann Wilkinson, an investigator from the OOC OGC. (ECF 1 at 140; ECF 1-1 at 34). Plaintiff alleges that the February 2 Charge was not sufficiently investigated because they did not "subpoena" Ms. Kilgore's personal cell phone records to find evidence of the pornographic video. (ECF 1 at 9, ECF 62-1 at 22-23). Plaintiff does not plead whether the February 2 Charge was actually submitted to the Equal Employment Opportunity Commission ("EEOC") or whether she ever received a determination or right-to-sue letter.

> **B.**     **The January 31, 2019, NYSDHR, and DOI Charges**

On January 31, 2019, Plaintiff filed identical charges against the OOC with the NYSDHR[4] and DOI (the "January 31, 2019 Charge"). (ECF 1 at 100; ECF 41-4 at 7). Both charges alleged that Plaintiff was subjected to sexual harassment when her coworkers viewed the pornographic video at work, and Plaintiff made claims for a hostile work environment as well as employment discrimination based on age, race, and sex, and retaliation from that incident. (ECF 1 at 100). On February 4, 2019, DOI referred the case back to OOC's OGC. (ECF 41-4 at 7).

NYSDHR issued a Determination and Order After Investigation on July 19, 2019, finding no probable cause to believe that OOC had engaged in unlawful discriminatory practices or that OOC was employing a discriminatory metrics system, and the charge was dismissed. (ECF 1 at 100-102). The NYSDHR investigation concluded that the record did not support Plaintiff's allegations of adverse employment action, retaliation, and OOC's metrics system being discriminatory. (ECF 1 at 100-101). Additionally, the NYSDHR investigation concluded that an

---

[4] Under a dual-filing or worksharing agreement, an EEOC complaint in New York City is shared with the New York State Division of Human Rights, a Fair Employment Practices Agency ("FEPA").

internal investigation <u>was</u> undertaken after Plaintiff complained about the incident and there was no corroboration for the allegation that a pornographic video had been viewed and discussed in the workplace, even after multiple interviews were conducted. (ECF 1 at 101).

In October 2020, Plaintiff retained private counsel and requested NYSDHR reopen the case for further investigation. (ECF 62-1 at 41-42). On January 6, 2021, NYSDHR declined to reopen this case because the time to appeal had expired and there was no indication that additional investigation would result in finding a violation. (ECF 1 at 96).

### C. The April 6, 2019, OAG Civil Rights Charge

On April 6, 2019, Plaintiff filed another charge with OAG Civil Rights Office against OOC (the "April 6, 2019 Charge"), alleging the occurrence of the pornographic video incident, (i.e., the same claim that Plaintiff previously raised to the NYSDHR), as well as other claims regarding OOC's metrics system, and that she was wrongfully denied merit increases. (ECF 1 at 91-92). On April 8, 2019, OAG replied via email that Plaintiff's claims did not allege a pattern or practice of discrimination. (ECF 1 at 91).

### D. The July 22, 2019, EEOC and NYSDHR Charge

Plaintiff filed another charge with the EEOC and NYSDHR on July 22, 2019, (the "July 22, 2019 Charge"), alleging that the OOC discriminated against her based on her race and sex, that she was sexually harassed, and that OOC retaliated against her by not giving her a merit increase. (*See generally* ECF Nos. 1, 41-2). Again, Plaintiff's factual allegations referred exclusively to the pornographic video incident and allege no other behavior that constituted sexual harassment. (ECF 41-2 at 4-6). Plaintiff also made additional allegations with her charge, including that NYSDHR and OOC did not conduct a full investigation of the pornographic video

incident, among others. (ECF 41-2 at 4-6). The EEOC dismissed the charge with a notice of right-to-sue on July 26, 2019. (ECF 41-2 at 8).

    **E.**    **2021 OATH Hearing and 2022 Civil Service Commission Appeal**

Plaintiff was notified by certified mail on April 20, 2020, that OOC was bringing disciplinary charges against her under New York Civil Service Law § 75 (the "OATH Hearing"), charging her with, *inter alia*, obstructing or hindering an OOC OGC investigation, providing or submitting false or misleading information and documents in connection with an EEO investigation, using her employer's resources for personal use, and "conduct prejudicial to good order and discipline." (ECF 1 at 200-206). Because Plaintiff is a member of the DC 37 union, she was represented by counsel retained by DC 37 on her behalf. (*See generally* ECF 1-1). The OATH hearing took place on or about May 5, 2021, (ECF 1-2 at 117), and Plaintiff alleges that the DC 37 attorney hired to represent her at the OATH hearing did not subpoena Ms. Kilgore's personal cell phone records to find evidence of the pornographic video on her phone. (ECF 1 at 9, 18).

After the formal OATH hearing, on January 5, 2022, ALJ Casey issued a report and recommendation finding Plaintiff guilty of one charge of misconduct and recommending a disciplinary penalty of a 20-day suspension without pay. (ECF 1 at 11; ECF 41-4). On January 24, 2022, OOC accepted the recommendation and found Plaintiff guilty of making a false statement in her February 2, 2018 Charge filed with the DOI when she accused co-workers of watching and discussing pornography at work. (ECF Nos. 34-3, 41-4 at 26).

On June 17, 2022, Plaintiff appealed ALJ Casey's report and recommendation to the Civil Service Commission ("CSC"), again represented by DC 37 counsel. (ECF 1 at 11). Plaintiff claimed that ALJ Casey "made a ruling without all the evidence" because the alleged pornographic video

was not presented at the OATH hearing. (ECF 1 at 9; ECF 34-6 at 2). On August 12, 2022, the CSC

affirmed ALJ Casey's findings ("the CSC Decision"). (ECF 41-5).

> **F.** **April 28, 2022, EEOC and NYSDHR Charge**

On April 28, 2022, Plaintiff filed another charge with the EEOC and NYSDHR against OOC

(the "April 28 Charge"), alleging discrimination, failure to investigate, and retaliation arising

from the disciplinary charges imposed by ALJ Casey. (ECF 41-7 at 2-4). Plaintiff also alleged that

she suffered an adverse employment action when younger colleagues were given opportunities

for advancement, but more experienced employees such as she were not. (ECF 1 at 67; ECF 41-

7 at 3). These alleged acts arise (again) from the pornographic video incident and disciplinary

charges OOC brought against Plaintiff on April 20, 2020, which Plaintiff alleges were retaliatory.

(*See generally* ECF 41-7). EEOC dismissed the charge with a notice of right-to-sue letter on

August 29, 2022. (ECF 41-7 at 6).

> **II.    PROCEDURAL HISTORY**

Plaintiff filed the instant complaint on November 29, 2023, against nine defendants:

OOC, OATH and ALJ Casey, DOI, OAG, Downey, DOJ, EEOC, and DC 37.[5] (ECF 1 at 2-3). At the

outset of this case, Judge Broderick issued several orders directing Plaintiff to file letters

indicating her intent to prosecute this case. (*See* ECF Nos. 3-6); (*see also* ECF 79), and on May

22, 2024, Plaintiff's claims were dismissed for failure to comply with Judge Broderick's orders.

(ECF 7). On May 29, 2024, Judge Broderick reopened the case and again directed Plaintiff to file

---

[5] Plaintiff appears to be bringing the lawsuit against Administrative Law Judge Casey but has named the Defendant in her complaint as "OATH" and listed "Judge Kevin Casey" as the "Job or Title" of OATH. For the purposes of this motion to dismiss, the Court will address Plaintiff's claims as against <u>both</u> OATH as a City agency and Judge Casey in his capacity as an administrative law judge.

a letter demonstrating her intent to prosecute this case. (ECF Nos. 9, 11). The Defendants were purportedly served on August 29, 2024, and on September 11, 2024, Plaintiff submitted a letter advising the Court that she had served all parties listed in the complaint. (ECF 15).

This matter was referred to me for general pretrial management on September 13, 2024. (ECF 19). On September 24, 2024, OAG and Downey filed a motion to dismiss. (ECF Nos. 21, 22). DC 37 filed a separate motion to dismiss on November 18, 2024, (ECF 32), and the OOC, ALJ Casey, and the DOI filed their motion to dismiss on December 24, 2024. (ECF 38). Judge Broderick entered an amended referral order on December 26, 2024, referring the case to me for general pretrial management and for a report and recommendation on the Defendants' motions to dismiss. (ECF 43). On April 28, 2025, DC 37 received and filed on Plaintiff's behalf her opposition to the Defendants' motions to dismiss. (ECF Nos. 62, 62-1). The Defendants' motions to dismiss were all fully briefed by May 19, 2025. (ECF Nos. 61, 64, 66).

On July 16, 2025, I ordered Plaintiff to show cause in writing, by August 1, 2025, why the Court should not recommend dismissal of the EEOC and DOJ (the "United States Defendants") for Plaintiff's (1) failure to comply with Rule 4(i) and (2) failure to name the proper parties as United States Defendants (the "July 16 OSC"). (ECF 75). Plaintiff timely filed a response to the July 16 OSC, (ECF 78), and on August 18, 2025, I issued a Report and Recommendation to Judge Broderick recommending that Plaintiff's claims against the EEOC and DOJ be dismissed with prejudice. (ECF 79).

III.    **DISCUSSION**[6]

   A.  <u>Legal Standard</u>

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a

motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). More specifically, the plaintiff must

allege enough facts to show "more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to sufficiently "raise a right

to relief about the speculative level," it must be grounded on factual allegations. *Twombly*, 550

U.S. at 555. A claim grounded on mere suspicion is not enough to meet this standard. *Id.*

"[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not

do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual

enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

As relevant here, a court is "obligated to afford a special solicitude to *pro se* litigants."

*Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Therefore, this Court must interpret

Plaintiff's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal citations omitted).

"However, the liberal treatment afforded to *pro se* litigants does not excuse a *pro se* party from

---

[6] Courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Felix v. City of N.Y.*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) (internal quotations omitted). Plaintiff fails to respond to many, if not all, of the Defendants' various arguments contained in their briefs. However, because Plaintiff is proceeding *pro se*, the Court will assess each of Defendants' arguments in turn.

compliance with the relevant rules of procedural and substantive law." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (internal quotation marks omitted). Accordingly, the Court may not "invent factual allegations that a plaintiff has not pled." *Daly v. Westchester Cty. Bd. of Legislators*, 19-CV-4642 (PMH), 2021 WL 229672, at *4 (S.D.N.Y. Jan. 22, 2021) (alterations and internal quotation marks omitted). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."[7] *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). The Court may consider facts raised in opposition papers, depending on the circumstances. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

---

[7] Generally, when ruling on a motion to dismiss, courts are confined to the four corners of the complaint. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). "The four corners of the complaint includes any documents attached to that pleading or incorporated into it by reference, any documents that are integral to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice." *Elliot v. Nestle Waters North Am. Inc.*, 13-CV-6331 (RA), 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014). Courts may consider documents that a plaintiff "had knowledge [of] and relied on in bringing suit." *Id.* Moreover, courts may consider documents that are "consistent with and 'integral'" to a plaintiff's complaint and clarify statements therein. *Id. See also, Fishman v. City of New Rochelle*, 19-CV-265 (NSR), 2021 WL 4925518, at *3 (S.D.N.Y. Oct. 19, 2021) ("A document is integral to the complaint where the plaintiff (1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint.") (internal quotations omitted).

Plaintiff alleges that the Defendants discriminated against her at work and in subsequent administrative proceedings, and that her attorneys provided by DC 37 breached their duty of fair representation in such proceedings. As part of their motions to dismiss and reply briefs, the defendants attach the following documents as exhibits: (1) Plaintiff's July 22 Charge (ECF 41-2); (2) Plaintiff's April 28 Charge, (ECF 41-7); (3) the OATH decision issued by ALJ Casey recommending Plaintiff be temporarily suspended from work, (ECF 41-4); (4) the OOC Notice of Determination and Order finding OOC did not engage in discrimination, (ECF 34-3); and the Civil Service Commission's decision affirming ALJ Casey's findings, (ECF 41-5). Because these documents necessarily underlie Plaintiff's claims, Plaintiff has knowledge of them, and Plaintiff had to rely on the findings of these documents to bring her claims now pending before the Court, these documents are integral to the complaint and may be considered on the instant motion to dismiss. *See Garrand Brothers, LLC v. Am. Honda Motor Co., Inc.*, 22-CV-924 (GTS) (CFH), 2023 WL 5835793, at *8 (N.D.N.Y. Sept. 8, 2023) (holding exhibits provided by defendants that are "integral" to the complaint may be considered on a motion to dismiss).

In reaching its conclusions, the Court is aware that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here. *Hughes v. Ester Co.*, 930 F. Supp. 2d 439, 461-62 (E.D.N.Y. 2013).

### B.   ALJ Casey Is Entitled to Absolute Immunity

"Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities." *Robinson v. N.Y. State Office of Child. & Fam. Servs.*, 23-CV-4477 (LTS), 2023 WL 4423559, at *3 (S.D.N.Y. July 10, 2023). This immunity extends to administrative law judges "for their actions in their adjudicatory roles" because their role is "functionally comparable to that of a judge." *Kellier v. MMS*, 20-CV-10939 (LLS), 2021 WL 535504, at *5 (S.D.N.Y. Feb. 10, 2021); *Robinson*, 2023 WL 4423559, at *3.

Because ALJ Casey's only participation in the events complained of by Plaintiff is the determination he made in his official capacity as an administrative law judge, he is entitled to absolute immunity.

Accordingly, I recommend that all claims against ALJ Casey be dismissed.

### C.   Plaintiff's Claims Against OAG and Downey Should be Dismissed

#### 1.   *Plaintiff's Age and Disability Claims Are Barred by Eleventh Amendment Sovereign Immunity*

"The Eleventh Amendment bars from federal court all suits by private parties against a state unless the state consents to such a suit or Congress has abrogated its immunity validly." *Murtha v. New York State Gaming Comm'n*, 17-CV-10040 (PMH), 2022 WL 784756, at *5 (S.D.N.Y. Mar. 15, 2022). The only exception to this rule is where an individual defendant is "sued in his or her official capacity to the extent the plaintiff seeks prospective injunctive relief from that defendant, such as reinstatement." *Id.*

It is well settled that ADEA claims against a state or state agency are barred by sovereign immunity. *See Bleichert v. New York State Educ. Dep't*, 793 F. App'x 32, 34 (2d Cir. 2019) ("Consequently, the Eleventh Amendment precludes an individual from bringing a claim against a state or state agency under the ADEA, and federal courts do not have subject matter jurisdiction over such claims."). Accordingly, Plaintiff's age discrimination claims under the ADEA against OAG, a state agency, are necessarily barred. As Plaintiff does not seek injunctive relief, her ADEA claims are also barred as to Downey. *See Murtha*, 2022 WL 784756, at *5-6.

Plaintiff's complaint alleges that OAG and Downey violated Title I of the ADA by failing to provide a reasonable accommodation. (ECF 1 at 2-4). However, Title I applies to a plaintiff's employer, and it is undisputed that OAG and Downey never employed Plaintiff. (ECF 1 at 5-7; ECF 1-1 at 5). Reading Plaintiff's complaint liberally, the Court construes Plaintiff as also raising a claim under Title II of the ADA against these Defendants. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *United States v. Georgia*, 546 U.S. 151, 153 (2006). Title II <u>does</u> abrogate a state's sovereign immunity, meaning a plaintiff can bring a claim under Title II against a state or state agency, "when properly applied under Section Five of the Fourteenth Amendment." *See United States v. Georgia*, 546 U.S. at 154; *Chichester v. New York State, Dep't of Educ., Adult Career & Continuing Educ. Servs.- Vocational Rehab.*, 16-CV-02508 (SJF) (SIL), 2017 WL 9485676, at *1 (E.D.N.Y. June 15, 2017), *report and recommendation adopted in part*, 16-CV-2508 (SJF) (SIL), 2017 WL 3016810 (E.D.N.Y. July 17, 2017). "The Supreme Court has established a three (3)-step analysis to be applied on a

11

claim-by-claim basis:" (1) the Court must identify which aspects of the State's alleged conduct violated Title II; (2) if a violation of Title II is found, the court must determine "to what extent such misconduct also violated the Fourteenth Amendment;" and (3) if the alleged misconduct violated Title II but <u>not</u> the Fourteenth Amendment, the Court must determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at *5.

Here, Plaintiff asserts in conclusory fashion that OAG "intentionally discriminated against" her, but does not plead with any requisite specificity whether she is disabled[8] or what specific conduct supports her Title II claim. Indeed, Courts in this district have held that Title II "does not cover employment discrimination claims," *see Henny v. New York State*, 842 F. Supp. 2d 530, 550 (S.D.N.Y. 2012), which is the crux of Plaintiff's complaint. Thus, OAG's "conduct" of employment discrimination, even if true, cannot support a claim under Title II, and is barred by the Eleventh Amendment. *See Castells v. Fisher*, 05-CV-4866, 2007 WL 1100850, at *5 (E.D.N.Y. Mar. 24, 2007) ("In the Court's view, given that there is no fundamental right implicated, the application of Title II to a case involving a state's alleged discrimination against a government employee on the basis of disability is outside the scope of Congress' Section 5 power. Accordingly, … Title II of the ADA does not abrogate the States' Eleventh Amendment immunity.").

Additionally, "Title II does not permit suit against state officials in their individual capacities," and "to the extent that a state official is sued in [her] official capacity, such suit is

---

[8] As discussed below, Plaintiff does not adequately plead that she is disabled as defined under the ADA. *See* Section III.G.2 *infra*.

deemed to be one against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Manuel v. New York*, 18-CV-11820 (VB), 2020 WL 5775271, at *3 (S.D.N.Y. Sept. 28, 2020) (internal quotations omitted). Plaintiff's Title II claim against Downey thus is barred for the same reasons that her Title II claim against OAG is barred. Even if Plaintiff had properly pleaded a Title II claim, she does not seek injunctive relief from Downey, and her claim also fails for this reason.

Accordingly, I recommend that Plaintiff's age and disability discrimination claims be dismissed as to OAG and Downey.

### 2. Plaintiff's Title VII Claims Against OAG and Downey Fail Because They Are Not Her Employers

"[T]the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't.*, 460 F.3d 361, 370 (2d Cir. 2006). Plaintiff's Title VII claims against OAG and Downey must fail because she does not plead that they ever were her employers.

Therefore, I recommend all Title VII claims against OAG and Downey be dismissed.

### 3. Plaintiff's Whistleblower Claims Fail Against OAG and Downey

Construing Plaintiff's complaint liberally, she also appears to bring claims under federal, state, and city whistleblower acts. Plaintiff's federal whistleblower claim fails because she is not a federal employee, and OAG and Downey are not federal employers. *See Bowens v. Correctional Assn. of New York*, 19-CV-1523 (PKC) (CLP), 2019 WL 1586857, at *4 (E.D.N.Y. Apr. 12, 2019). Plaintiff's city whistleblower claims fail because OAG and Downey are not a city

agency.[9] Finally, Plaintiff's state whistleblower claims fail because she is a member of DC 37 and subject to a collective bargaining agreement that bars filing suit pursuant to § 75-b.[10]

Accordingly, Plaintiff's whistleblower claims should be dismissed as to OAG and Downey.

### D.  Plaintiff's Claims Against OOC, OATH, And DOI Must Be Dismissed Because City Agencies Are Not Suitable Entities

"All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. Thus, city agencies such as the OOC, OATH, and DOI are unsuitable entities for a plaintiff's suit. *See Merced v. Ponte*, 17-CV-4918 (KAM), 2019 WL 1208791, at *12 (E.D.N.Y. Mar. 13, 2019) (dismissing plaintiff's claims against OATH because municipal agencies cannot be sued independently); *Davis v. New York City Department of Corrections*, 17-CV-3863 (MKB), 2017 WL 5634123, at *2 (E.D.N.Y. Nov. 22, 2017) (holding that claims against the DOI must be dismissed on the ground that it is not a suitable agency).

Accordingly, OOC, OATH, and DOI are unsuitable entities for Plaintiff's suit, and I recommend that all claims as to these defendants be dismissed. However, given Plaintiff's *pro*

---

[9] N.Y.C. Admin Code §§ 12-113(b)(1) ("No officer or employee of an agency of the city shall take an adverse personnel action….") (emphasis added). Further, as discussed in Section III.J.2. *infra*, §§ 12-113 does not provide a private right of action.

[10] *See* Section III.J.1 *infra*; *Rothbein v. City of N.Y.*, 18-CV-5106 (VEC), 2019 WL 977878, at *13 (S.D.N.Y. Feb. 28, 2019). To the extent the complaint can be construed to raise whistleblower claims under N.Y.L.L. § 740, any such claim would necessarily fail as inapplicable to public employees. *Peay v. Admin. For Children's Servs.*, 17-CV-4562 (JGK), 2018 WL 2417848, at *3 (S.D.N.Y. May 29, 2018).

*se* status, the Court will construe and assess Plaintiff's discrimination and retaliation claims as if they had been brought against the City of New York (the "City").

### E.    Plaintiff Failed to Exhaust Her Administrative Remedies for the February 2, 2018 Charge and April 6, 2019 Charge

A plaintiff is required to exhaust their administrative remedies before a Title VII, ADA, or ADEA suit can be brought. *Calderon v. Koneska Health*, 22-CV-7808 (LTS), 2023 WL 2612216, at *4 (S.D.N.Y. Mar. 22, 2023). In states like New York, the charge must be filed with the EEOC within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117(a); *Ft. Bend Cty. v. Davis*, 587 U.S. 541, 544 (2019) (holding where a state has a "fair employment agency," Title VII claims must be brought within 300 days of the challenged practice); *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 198 ("The ADEA further requires that an EEOC charge be filed within 180 days, or 300 days for a deferral state, after the alleged unlawful practice occurred.") (internal quotations omitted); *Szuszkiewicz v. JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 338 (E.D.N.Y. 2014) (holding ADA claims in New York must be filed with the EEOC within 300 days).

Here, Plaintiff filed the February 2, 2018 Charge about the alleged pornographic video incident with the internal EEO Officer at OOC (i.e., an OOC employee) the day of the alleged incident. (ECF 1 at 103-4; ECF 1-1 at 17). Plaintiff fails to plead, however, that she made a formal charge to the EEOC itself or that she ever received a right-to-sue letter for the underlying incidents. Plaintiff also fails to plead that she received a right-to-sue letter for the April 6, 2019 Charge; she only pleads that she sent a complaint by email to the New York Attorney General and received a response directing her to file her complaint with the NYSDHR.

(ECF 1 at 91). Accordingly, the Court cannot find that Plaintiff exhausted her administrative remedies as to these charges.

### F.  Plaintiff's Discrimination and Retaliation Claims Are Untimely

Even assuming that Plaintiff had exhausted the February 2, 2018 Charge and April 6, 2019 Charge, all of Plaintiff's discrimination and retaliation claims were untimely filed and should be dismissed for this reason.

After receiving a right-to-sue letter, a plaintiff must file suit within 90 days. *Myra Smith v. City of New York*, 23-CV-8229 (JLR) (RWL), 2025 WL 1983047, at *7 (S.D.N.Y. June 3, 2025) (applying 90-day statute of limitations of right-to-sue letter to Title VII and ADEA actions); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (applying 90-day statute of limitations of right-to-sue letter to ADA actions).

Plaintiff filed five charges: the February 2, 2018 Charge, the January 31, 2019 Charge,[11] the April 6, 2019 Charge, the July 22, 2019 Charge, and the April 28, 2022 Charge, claiming, *inter alia*, Title VII, ADA, and ADEA discrimination and retaliation against Defendants OOC, OAG, and Downey. Plaintiff received right-to-sue letters on July 26, 2019 and August 29, 2022, for the July 22, 2019 Charge and April 28, 2022 Charge respectively. However, Plaintiff did not bring this action until November 29, 2023, well over a year after Plaintiff's most recent right-to-sue letter was issued.

---

[11] As to the January 31, 2019 Charge, the NYSDHR issued a Determination and Order After Investigation dismissing all of Plaintiff's claims. Having fully adjudicated these particular claims before the NYSDHR, the claims underlying the January 31, 2019 Charge are barred by the election of remedies doctrine. *See Williams v. City of New York*, 916 F. Supp. 2d 517, 522 (S.D.N.Y. 2013) (dismissing claims that were brought before and rejected by the NYSDHR).

Accordingly, Plaintiff failed to timely bring this suit, and all of her claims should be dismissed for this reason. [12] Even if Plaintiff had timely brought this suit, her claims should still be dismissed on the merits, as discussed below.

### G. **Plaintiff's Discrimination Claims Should Be Dismissed**

        *1. Title VII Claims*

"Title VII of the Civil Rights Act of 1964 . . . prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination." 42 U.S.C. § 2000e *et seq.*; *McCutcheon v. United States DOI*, 20-CV-10616 (VF), 2023 WL 2456558, at *6 (S.D.N.Y. Mar. 10, 2023) (internal quotation marks omitted). The elements of a Title VII employment discrimination claim are: (1) discrimination against a plaintiff by their employer; (2) because of their race, color, religion, sex, or national origin. *See Moore v. Hadestown Broadway Ltd. Liability Co.*, 722 F. Supp. 3d 229 (S.D.N.Y. 2024). On a motion to dismiss, a plaintiff's initial pleading standards are "relaxed." *Moore*, 722 F. Supp. 3d at 245. "[A]bsent direct evidence of discrimination, [a] [p]laintiff's burden to survive a motion to dismiss is to plead facts sufficient to show that she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (internal quotation marks omitted).

Plaintiff pleads that she is a member of a protected class and that she is qualified to perform the essential functions of her job since her "evaluations rate her work performance as

---

[12] Even assuming *arguendo* that Plaintiff had pleaded that she did file a formal charge with the EEOC or NYSDHR for the February 2, 2018 Charge and received right-to-sue letters for the February 2, 2018 Charge and April 6, 2019 Charge, this would not change the Court's analysis.

superior." (ECF 41-4 at 26). However, Plaintiff fails to plead that the adverse employment action <u>she</u> suffered was predicated by a discriminatory intent. Plaintiff's complaint raises only threadbare, conclusory allegations concerning discrimination broadly against Black women at the OOC and makes no claim as to her individual circumstances. Plaintiff fails to plead any facts suggesting that any actions were taken by the OOC against her <u>because</u> she is Black or a woman. Indeed, the only factual allegations of discrimination pleaded are the events of February 2, 2018. Such conclusory allegations are insufficient to state a claim for discrimination under Title VII. [13]

### 2. ADA Title I Claims

Plaintiff's ADA Title I claims should be dismissed because she fails to plead that she is "disabled" as defined under the ADA or that OOC failed to provide her a reasonable accommodation.

To state a prima facie claim for disability discrimination based on failure to accommodate under Title I, a plaintiff must show:

> [B]y a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) . . . his employer refused to make a reasonable accommodation.

---

[13] To the extent that the complaint can be construed to raise a claim for hostile work environment under Title VII, any such claim would necessarily fail because of Plaintiff's failure to plead that the conduct complained of occurred "because of her sex." *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 430 (S.D.N.Y. 2024). Moreover, the complaint fails to allege "sufficiently severe or pervasive" conduct to state a claim for hostile work environment. *Id.* ("Plaintiff only alleges they harassed her several times, and fails to identify over what period of time, the number of times, or any specifics of their behavior.") (internal quotation marks omitted).

*Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (internal quotation marks omitted). The ADA defines "disability" "with respect to an individual as a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Discrimination in violation of the ADA includes, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). "A diagnosis alone is insufficient to establish disability under the statute." *Ibela v. Allied Universal*, 21-CV-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022).

It is undisputed that the OOC was Plaintiff's employer and is thus subject to the ADA and that Plaintiff is qualified to perform the essential functions of her job since her "evaluations rate her work performance as superior." (ECF 41-4 at 26). However, Plaintiff does not adequately plead that she suffered from a disability within the meaning of the ADA. While Plaintiff pleads that she was diagnosed with PTSD, (ECF 1 at 66, 24-9), she fails to sufficiently plead that her diagnosis "substantially limited one or more major life activities," and only makes conclusory allegations that she is "disabled." 42 U.S.C. § 12102(1)(A); *Ibela v. Allied Universal*, 21-CV-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022).

Even if Plaintiff had adequately pleaded a disability, Plaintiff does not plead facts sufficient to show that OOC refused to make a reasonable accommodation. While Plaintiff includes as an exhibit to her complaint a request for leave under FMLA, nowhere in the complaint does she suggest that she was granted or denied such leave, or that the decision to

deny such leave (if this even happened) constitutes discrimination or failure to reasonably accommodate, and the Court declines to make any such inference.[14]

### 3. ADEA Claims

"The ADEA protects employees over [forty] years of age from age discrimination in employment," including unlawful discharge or discrimination with respect to compensation or privileges of employment. *Gonzalez v. Sutton Park Ctr. for Nursing & Rehab.*, 23-CV-8788 (KMK), 2025 WL 920607, at *6 (S.D.N.Y. Mar. 26, 2025) (internal quotations omitted); 29 U.S.C. § 623(a)(1). "To successfully claim age discrimination under the ADEA, Plaintiff must allege that: (1) she was within the protected age group; (2) she was qualified for the position; (3) she experienced [an] adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination." *Brown v. New York City Dep't of Educ.*, 20-CV-2424 (VEC) (OTW), 2021 WL 4943490, at *8 (S.D.N.Y. Aug. 31, 2021), *report and recommendation adopted*, 20-CV-2424 (VEC), 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021) (internal quotations omitted).

Plaintiff satisfies elements (1) and (2) of her discrimination claim as she is over 40 years old and is qualified for her position. (ECF 1 at 88, ECF 41-4 at 26). Plaintiff also arguably satisfies element (3) as she pleads that she suffered an adverse employment action when she was not given opportunities for advancement, (ECF 1 at 67); *see Zoulas v. New York City Dep't of Ed.*, 400 F. Supp. 3d 25, 55 (S.D.N.Y. 2019) ("The denial of professional training opportunities may

---

[14] To the extent that Plaintiff brings a claim for hostile work environment, that claim fails for the same reasons that hostile work environment claims under Title VII fail; Plaintiff fails to plead facts showing that the "discriminatory treatment at issue was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment' and that the hostility occurred because of the protected characteristic of disability." *Dollinger v. New York State Ins. Fund*, 725 F. App'x 828, 831 (2d Cir. 2018).

constitute an adverse employment action, but only where an employee can show material harm from the denial, such as a failure to promote or a loss or career advancement opportunities.") (internal quotation marks omitted), and that the OOC brought grievance procedures against her that resulted in a 20-day suspension. However, Plaintiff fails to plead any facts that give rise to even the faintest inference of discrimination based on her age. Plaintiff's complaint makes vague references to the race of her colleagues, which are detached from her age discrimination claims, and pleads in conclusory fashion that only younger colleagues were given opportunities for advancement; but Plaintiff does not plead she was not given opportunities <u>because</u> of her age. (ECF 1 at 67); *Brown v. New York City Dep't of Educ.*, 20-CV-2424 (VEC) (OTW), at *9 (dismissing age discrimination claims because Plaintiff failed to make the plausible allegation that "but for" her age, Defendant would not have taken adverse action). Nor does Plaintiff plead that those employees younger than her were similarly situated in all material respects, such as to give rise to an inference of discrimination based on her age. *See Iazzetti v. Town of Tuxedo*, 18-CV-6200 (NSR), 2020 WL 4340872, at *9 (S.D.N.Y. July 27, 2020) (dismissing ADEA claims where Plaintiff failed to establish that he was "similarly situated in all material respects with any employees outside the ADEA's protected class"). [15]

Accordingly, all Plaintiff's discrimination claims against the City should be dismissed.

---

[15] Plaintiff's failure to plead facts sufficient to give rise to an inference of discrimination based on age necessarily precludes any claims for hostile work environment under the ADEA as well. *See, e.g., Barun v. Administrators for the Professions, Inc.*, 17-CV-4055 (DRH) (AKT), 2018 WL 3597504, at *6 (E.D.N.Y. July 26, 2018) (dismissing ADEA discrimination and hostile work environment claims where the plaintiff failed to plead sufficient facts to suggest an inference of discrimination).

**H.  Plaintiff's Retaliation Claims Should Be Dismissed**

The Court construes Plaintiff as also bringing retaliation claims against the City under Title VII, the ADA, and the ADEA.

To state a claim for retaliation under Title VII, the ADA, or the ADEA, a plaintiff allege facts that plausibly suggest that: (1) she participated in a protected activity; (2) the employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between her engaging in the protected activity and the adverse employment action. *James v. New York City Health + Hospitals Corp. Office of Legal Affairs Claims Division*, 23-CV-1206 (PGG) (OTW), 2024 WL 5508202, at *11 (S.D.N.Y. Sept. 24, 2024) (setting out the legal standard for retaliation under Title VII, *report and recommendation adopted in part, rejected in part by* 2025 WL 959093 (S.D.N.Y. Mar. 31, 2025); *see also C.C. v. Google, LLC*, 24-CV-7811 (PAE), 2025 WL 1938809, at *9 (S.D.N.Y. July 15, 2025) (setting out the legal standard for retaliation under the ADA); *Zoulas v. N.Y.C. Dept. of Ed.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. Aug. 29, 2019) (setting out the legal standard for retaliation under the ADEA).

Liberally construing the allegations in Plaintiff's charges, Plaintiff appears to claim that she was retaliated against when OOC (1) failed to give Plaintiff a raise or other advancement opportunities; (2) filed disciplinary charges against her with OATH; and (3) suspended Plaintiff for 20 days upon ALJ Casey's recommendation. Plaintiff has sufficiently pleaded that she engaged in a protected activity by filing charges with the NYSDHR and EEOC and that OOC was aware of these protected activities, *see James*, 2024 WL 5508202, at * 12, and arguably pleads that she suffered one or more adverse employment actions (e.g., loss of advancement

opportunities, the OATH disciplinary charges and subsequent suspension). However, Plaintiff's allegations of retaliation are too conclusory to survive Defendants' motion to dismiss.

As to her Title VII claims, Plaintiff fails to plead facts to suggest either an indirect causal connection between the two (e.g., that the protected activity was followed closely by the retaliation or disparate treatment of other employees engaged in similar conduct) or a direct causal connection (e.g., evidence of retaliatory animus directed at Plaintiff). *See Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 280 (S.D.N.Y. 2024). Plaintiff first complained of the pornographic video incident at or around the time it occurred, February 2, 2018. Her later charges complain about that video incident and the way the subsequent investigations were handled. Plaintiff was notified that OOC was bringing disciplinary charges against her on April 20, 2020, nearly a year after she filed the July 22, 2019 Charge. OOC's imposition of a 20-day suspension did not occur until January 2022. *See Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59-60 (S.D.N.Y. 2021) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."). Further, Plaintiff fails to identify any instance where she was denied an advancement opportunity or merit increase, let alone link any such occurrences to any particular incident or circumstances that could lead to an inference of retaliation.

Plaintiff's retaliation claims under the ADA also fail because Plaintiff failed to allege that similarly situated employees were treated differently from her, *see C.C.*, 2025 WL 1938809 (finding plaintiff did not adequately plead retaliation under the ADA where plaintiff did not allege similarly situated employees were treated differently, that the employer had a history of retaliation, or that plaintiff ever sought disability accommodations). The same is true for her

claims under the ADEA, *see Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 365-66

(S.D.N.Y. 2024) (dismissing ADEA retaliation claims where the plaintiff failed to allege sufficient

facts to support the contention that she was fired because plaintiff filed a discrimination claim).

The fact that Plaintiff did not receive a raise or advancement opportunities, or that OOC

brought disciplinary charges against her, are insufficient on their own to support a claim of

retaliation, and Plaintiff fails to plead a nexus between these adverse employment actions and

her protected activities (e.g., her several complaints to the NYSDHR, EEOC, and internal

management). Plaintiff's failure to plead specific facts that suggest any sort of causal

connection between her engagement in protected activities and the adverse employment

actions is fatal to her retaliation claims.

Accordingly, all of Plaintiff's retaliation claims should be dismissed.

### I.    Plaintiff's Breach of Duty of Fair Representation Claim

#### 1.    *Plaintiff's Claim Against DC 37 for Breach of Duty of Fair Representation Is Barred by the Statute of Limitations.*

As an initial matter, Plaintiff's claim for breach of the duty of fair representation is

barred as untimely. Under federal law, claims for the breach of the duty of fair representation

("DFR") against a union are subject to a six-month statute of limitations, which accrues no later

than the time when a plaintiff knew or reasonably should have known that such a breach of the

duty of fair representation had occurred. *Hosokawa v. Screen Actors Guild-Am., Fed'n of*

*Television & Radio, Artists*, 234 F. Supp. 3d 437, 441 (S.D.N.Y. 2017), *aff'd sub nom. Hosokawa v.*

*New York Loc. of Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 745 F. App'x 433

(2d Cir. 2018); *see* 29 U.S.C. §160 (b). Under New York law, proceedings against a union for

breach of its duty of fair representation have a four-month statute of limitations from the date

that the employee knew or should have known that a breach occurred or the date the employee suffered actual harm, whichever is later. *See Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 394 (S.D.N.Y. 2009). However, even using the longer six-month statute of limitations, Plaintiff's claim is untimely.

Liberally construing the complaint, Plaintiff asserts that the union breached its DFR in connection with the union's representation of her at the OATH hearing in 2021. Thus, at the very latest, Plaintiff did or should have known about a potential breach of the DFR on December 12, 2022, when she filed her verified improper practice petition against DC 37 accusing the union of breaching its duty of fair representation. (ECF 34-8 at 2). Plaintiff should have filed a claim by June 12, 2023, but did not file this lawsuit until November 29, 2023.[16]

Accordingly, I recommend that Plaintiff's claim against DC 37's for breach of its DFR be dismissed as untimely.[17]

## 2. Plaintiff's Fails to State A Claim for Breach of DFR Against DC 37

Only when a union's behavior is "so far outside a wide range of reasonableness as to be irrational" can it be considered "arbitrary" and constitute a breach of DFR. *Fleischer v. Barnard Coll.*, 20-CV-4213, 2021 WL 5365581, at *2 (2d Cir. Nov. 18, 2021) (internal quotation marks

---

[16] Because Plaintiff's improper practice petition against DC 37 accuses DC 37 of breaching the DFR, the Court does not find that the BCB's subsequent decision, issued on April 4, 2023, is a proper point from which to calculate the statute of limitations. Even if it did, Plaintiff's complaint was still over a month past the statute of limitations.

[17] Moreover, Plaintiff's claims against DC 37 for breach of its DFR to her are likely also barred under the doctrine of *res judicata*, which requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015). Plaintiff's complaint to the BCB requires arguing the same issues that were heard on the CSC appeal. The complaint was adjudicated on the merits, the same parties are involved, and no new claims are raised in the instant case. Plaintiff's complaint essentially asks for a re-adjudication of BCB proceeding. Therefore, Plaintiff's claims against DC 37 are barred under the doctrine of *res judicata*.

omitted). Union actions which are fraudulent, deceitful, or dishonest require a finding of bad

faith. *Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x 483, 487 (2d Cir. 2019)

(internal quotations omitted). However, "[n]either a union's decision not to pursue an

employee's grievance to every level of the applicable procedure, nor the employee's

dissatisfaction with the manner in which the union conducted the representation, constitutes

sufficient grounds warranting a finding of a breach of the duty of fair representation." *Alterescu

v. N.Y.C. Dep't of Educ.*, 21-CV-925 (KPF), 2022 WL 3646050, at *14 (S.D.N.Y. Aug. 23, 2022)

(internal quotation marks omitted).

 Here, Plaintiff fails to plead facts that suggest DC 37's actions were "arbitrary,

discriminatory, or in bad faith." *Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x

483, 487 (2d Cir. 2019). Plaintiff alleges that DC 37 failed to provide her with adequate legal

representation by failing to subpoena her coworker's phone records in the OATH proceeding.

Plaintiff's allegation is nothing more than "dissatisfaction with the manner in which the union

conducted the representation," and does not constitute sufficient grounds warranting a finding

of a breach of the duty of fair representation. *Alterescu v. N.Y.C. Dep't of Educ.*, 21-CV-925

(KPF), 2022 WL 3646050, at *14 (S.D.N.Y. Aug. 23, 2022).[18]

 Accordingly, I recommend that all of Plaintiff's claims against DC 37 be dismissed.

---

[18] Even if Plaintiff pleaded in her complaint that DC 37 breached its DFR by failing to represent her regarding the warning memorandum, failing to appeal her suspension, and not communicating that they would not represent her in further judicial proceedings, these claims would also fail. Plaintiff pleads nothing to support a finding that DC 37's purported failure as to the warning memorandum rises to the level of "arbitrary, discriminatory, or bad faith." *Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x 483, 487 (2d Cir. 2019). Plaintiff's dissatisfaction with the outcome of the OATH proceeding cannot support a claim for breach of DFR, and no facts suggest that such decisions were arbitrary or discriminatory.

### J.  **Plaintiff's Whistleblower Claims Fail**

#### 1.   *The Federal Whistleblower Protection Act*

In her complaint, Plaintiff invokes protections under the "federal whistleblower act." (ECF 1 at 4). While several federal statutes prohibit certain employers from taking adverse actions against an employee for reporting violations of law or fraud, waste, and abuse, Plaintiff appears to rely on the Whistleblower Protection Act ("WPA") of 1989.[19] 5 U.S.C. § 2302(b)(8)-(9); *see also* ECF 1 at 4. "Under the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, certain <u>federal employees</u> may obtain administrative and judicial review of specified adverse employment actions." *Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) (emphasis added) (internal quotations omitted). "The WPA is part of the CSRA and prohibits certain federal employees from taking adverse personnel actions against any employee for reporting any violation of any law, rule, or regulation…." 5 U.S.C. § 2302(b)(8)(A)." *Id.*

Plaintiff is not a federal employee; she worked for the OOC. Therefore, Plaintiff is not entitled to the protections afforded by the WPA, and this claim should be dismissed.

#### 2.   *State and City Whistleblower Protections*

Plaintiff also appears to bring claims against Defendants under the New York State and New York City Whistleblower Acts, § 75-b of the New York Civil Service Law and § 12-113 of the

---

[19] While other federal whistleblower statutes such as Section 807 of Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") provide whistleblower protections, such statutes are inapplicable to Plaintiff. Sarbanes-Oxley only provides whistleblower protections for employees of publicly traded companies, *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 440 (S.D.N.Y. 2013) (quoting 18 U.S.C. §1514A), and Dodd-Frank only applies to whistleblowers who provide information to the Securities and Exchange Commission for potential violations of federal securities laws, *Rimini v. J.P. Morgan Chase & Co.*, 22-CV-7768 (JPC), 2024 WL 4354875, at *7 (S.D.N.Y. Sept. 30, 2024).

New York City Administrative Code, for unlawful retaliation by a public employer against an employee.

Employees subject to collective bargaining agreements are barred from filing suit in federal court to enforce their rights, pursuant to § 75-b. *Rothbein v. City of N.Y.*, 18-CV-5106 (VEC), 2019 WL 977878, at *13 (S.D.N.Y. Feb. 28, 2019). Here, Plaintiff is a member of DC 37, and describes the union's grievance proceedings in detail. (ECF 1 at 11-17; ECF 200-205). DC 37 alleges, and Plaintiff does not contest,[20] that as a member of DC 37, she is subject to a collective bargaining agreement. (*See* ECF 41-8).[21] Thus, her whistleblower claims are necessarily barred.[22]

Section 12-113 of the New York City Administrative Code provides protections for an employee of a city agency concerning conduct which she knows or reasonably knows to involve "corruption, criminal activity, conflict of interest, gross mismanagement or abuse of authority . . . [or which] present a substantial risk of harm to the health, safety or educational welfare of a child." N.Y.C. Admin. Code §§ 12-113(b)(1) and (b)(5). However, because § 12-113 "provides no private right of action for a city officer or employee," Plaintiff's claims necessarily fail as a matter of law. *Klein v. City of New York*, 10-CV-9568 (PAE) (JLC), 2011 WL 5248169, at

---

[20] Plaintiff failed to respond to DC 37's argument that she is barred from bringing a whistleblower claim due to her collective bargaining agreement, and thus could be deemed to have conceded this point.

[21] The Court takes judicial notice of the collective bargaining agreement here. *See Verdi v. City of New York*, 306 F. Supp. 3d 532, 550 n. 17 (S.D.N.Y. 2018) (citing *Granados v. Harvard Maint., Inc.*, 05-CV-5489 (NRB), 2006 WL 435731, at *3 n. 3 (S.D.N.Y. Feb. 22, 2006).

[22] Even if not barred, Plaintiff abandoned her claim by failing to respond to Defendants' arguments in her opposition, *see Mohan v. City of New York*, 17-CV-3820 (KPF), 2018 WL 3711821, at *15 (S.D.N.Y. Aug. 3, 2018), and failed to plead that she served a notice of claim on Defendants within 90 days of the alleged violation as required by N.Y. Gen. Municipal Law §§ 50-e and 50-i. *See Morales v. City of New York*, 14-CV-7253 (JGK), 2016 WL 9651130, at *7 (S.D.N.Y. Aug. 9, 2016).

*9 n. 6 (S.D.N.Y. Oct. 28, 2011) (quoting *Healy v. City of New York Dep't of Sanitation*, 04-CV-7344 (DC), 2006 WL 3457702, at *7 (S.D.N.Y. Nov. 22, 2006)).

Accordingly, Plaintiff's state and city whistleblower claims should be dismissed.[23]

### K.   Plaintiff's New Constitutional Claims against OOC, OAG, and DC 37[24]

"A *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in … opposition papers, but the Court may consider new claims appearing for the first time in briefing if "the claims could have been asserted based on the facts alleged in the complaint." *Davila*, 343 F. Supp. 3d at 267. "In order to satisfy the constitutional minimum, the predeprivation proceedings need not be elaborate. The Constitution mandates only that such a process include, at a minimum, notice and opportunity to respond." *Marciano v. De Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (internal quotations omitted).

For the first time in her opposition to Defendants' motions to dismiss, Plaintiff asserts that she was denied due process rights under the Fourteenth Amendment, (ECF 62-1 at 4), which claim, construing the complaint liberally, "could have been asserted based on the facts alleged in the complaint." *Davila*, 343 F. Supp. 3d at 267. Plaintiff argues that Defendants OOC, OAG, and DC 37 violated her due process rights at the OATH hearing because they did not "allow [the pornographic video] to be entered into evidence" before imposing a 20-day suspension. (ECF 62-1 at 12, 21).

---

[23] To the extent the complaint can be construed to raise whistleblower claims under N.Y.L.L. § 740, any such claim would necessarily fail as inapplicable to public employees. *Peay*, 2018 WL 2417848, at *3.

[24] Plaintiff for the first time in her opposition also alleges that her Fifth Amendment rights were violated. Because this claim is only applicable to Defendants EEOC and DOJ, who I recommended be dismissed in my August 18, 2025, R&R, (ECF 79), the Court declines to address these claims here.

Plaintiff fails to plead with any specificity how her due process rights were violated. Plaintiff was notified of the disciplinary charges against her via certified mail on April 20, 2020, and had the opportunity to respond at a formal OATH administrative hearing. Plaintiff then appealed the OATH determination and OOC's enforcement of a twenty-day suspension without pay to the CSC. (*See generally* ECF 1; ECF 5 at 8). Plaintiff then brought the instant case to federal court. Plaintiff was represented by a DC 37 attorney throughout the OATH hearing and CSC appeal process. It is not clear to the Court what additional due process Plaintiff could have received that she has not already.

Accordingly, Plaintiff's claim that the City and DC 37 violated her Fourteenth Amendment due process rights should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that all of Plaintiff's claims be **DISMISSED with prejudice.**

## V.    OBJECTIONS

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Vernon S. Broderick, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.**  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,

_____
*/s/ Ona T. Wang*

Dated: August 26, 2025                                               **Ona T. Wang**
     New York, New York                              United States Magistrate Judge